William GREEN, Individually, Appellants and as Representative of the Estate of Gloria Green, Deceased; Tracey Green and Teresa Green Morris, Appellants,

v.

Rickey J. BRANTLEY; Robert W. Appellees Hammer; Jose, Henry & Brantley, a partnership; and Jose, Henry, Brantley & Keltner, a limited liability partnership, Appellees.

No. 2–98–170–CV.

Court of Appeals of Texas, Fort Worth.

Sept. 30, 1999.

Doug Perrin, Arlington, for Appellant William Green.

Thompson & Thomas, P.C., and George L. Thompson, III, Lubbock, for Appellants Tracy Green and Teresa Green Morris.

Meador & Meador, L.L.P., and RObert M. Meador and Terri J. Meador, Dallas, for Appellee Robert W. Hammer.

Burford & Ryburn, L.L.P., and Kevin J. Croy and Robert F. Begert, Dallas, for Appellee Rickey J. Brantley, Jose, Henry & Brantley, et al.

PANEL B: DAY, DAUPHINOT and HOLMAN, JJ.

## OPINION

DIXON W. HOLMAN, Justice.

This appeal is from a summary judgment denying Appellants, William Green, individually and as representative of the estate of his deceased wife Gloria, and their daughters, Tracey Green and Teresa Green Morris, any damages for the alleged malpractice of their former lawyers. Faced with Appellees' "no evidence" summary judgment motion, Appellants failed to meet their burden of producing summary judgment evidence that raises a genuine issue of material fact with regard to each cause of action they sue upon. Accordingly, we will affirm the trial court's judgment.

## BACKGROUND

Gloria Green, a Somervell County resident, discovered that she was suffering from cancer that had not been diagnosed during previous examinations by her gynecologist, Dr. Philip Bailey, or a radiologist, Dr. John Maley. Gloria and William sued Dr. Bailey, Dr. Maley, and Kimbro Medical Center in Somervell County for medical malpractice. Gloria died while the suit was pending. The Greens' children, Appellants Tracey Green and Teresa Green Morris, then joined their father as plaintiffs, and the suit against the physicians continued as a wrongful death action. On the eve of trial in 1995, Appellants accepted $850,000 from the physicians' insurers and settled that suit.

In 1997, William and the two children filed the current suit in Tarrant County, contending that they were coerced and misled into settling the wrongful death action because of negligence, deceptive trade practices, breach of contract, negligent misrepresentations, breach of fiduciary duties, and fraud by the lawyers who represented them in the wrongful death suit, Appellees Rickey J. Brantley and Robert W. Hammer. Appellants also sued the lawyer partnerships known as Jose, Henry & Brantley, and Jose, Henry,

Brantley & Keltner, L.L.P., additional appellees here.

In the current suit, Appellants allege that they were induced to settle the wrongful death suit against Dr. Bailey and Dr. Maley, only because Appellees Brantley and Hammer:

1. Reported falsely to Appellants that Dr. Bailey's insurance coverage for malpractice claims was limited to $1 million, and that if the trial of the wrongful death suit ended with a jury verdict that awarded Appellants damages in an amount greater than the limit of the insurance, the *Stowers* doctrine would enable Dr. Bailey to then sue his insurer and recover more than $1 million for himself. *See G.A. Stowers Furn. Co. v. American Indemnity Co.*, 15 S.W.2d 544, 547 (Tex. Comm'n App.1929, holding approved);

2. did not inform Appellants that if they tried the wrongful death suit and if the jury returned a verdict in their favor that exceeded $1 million, Appellants would "have an opportunity" to receive from Dr. Bailey an assignment of his *Stowers* action (against the insurer);

3. said that Dr. Maley's insurance coverage was only $200,000 when in truth it was $500,000;

4. claimed to have done an investigation of Dr. Bailey's financial condition revealing that he had no assets from which Appellants could collect more than $1 million; and

5. failed to properly prepare the case for trial or to keep Appellants informed about the case.

Appellants argue that the alleged conduct of Brantley and Hammer breached fiduciary duties to Appellants and induced them to settle the wrongful death suit for only $850,000 when they could have tried the case and obtained more money. Appellants' second amended petition, which was their live pleading at the time the trial court considered Appellees' summary judgment motion, alleges that Appellants

are entitled in the lawyer malpractice action to recover "damages which could have been and should have been obtained by settlement or verdict" in the wrongful death suit, plus Appellants' "damages" from the "opportunity" they "would have" *if* a jury had returned a verdict of more than $1 million in the wrongful death suit and *if* Dr. Bailey had allowed Appellants to take over any *Stowers* action *that the doctor might have acquired* against his own insurer, plus damages to Appellants for their "pain, suffering, emotional distress and mental anguish" resulting from settling the wrongful death suit for $850,000. Appellants also sought to recover their own attorney fees in this suit and to compel Appellees, as a penalty for their alleged conduct, to forfeit the attorney fees they received from the $850,000 settlement.

### ISSUES

Appellants' fundamental complaint on appeal is that the trial court erred by granting Appellees' motion for summary judgment. Within that broad challenge, Appellants insist that the summary judgment evidence raises genuine issues of material fact about whether Appellees' alleged conduct is a proximate cause of Appellants' alleged injuries and damages, about Appellees' alleged breach of fiduciary duty to Appellants, and about the amount of damages Appellants allegedly suffered. Appellants contend that the trial court incorrectly decided as a matter of law that the summary judgment affidavits of Appellees' witnesses Daniel Barrett, J.D., and David Plotkin, M.D., were competent to support Appellees' motion, and that as a matter of law the affidavit of Appellants' witness Floyd Holder, J.D. was not competent to support Appellants' claims that genuine issues of material fact do exist.

### THE STANDARD OF REVIEW

Appellees answered this suit by denying the alleged malpractice, and they also filed their motion for summary judgment, supported with affidavits. Their motion asserts that there is no evidence of one or more of the essential elements Appellants must prove in order to show themselves entitled to recover upon the alleged causes of action. Specifically, the summary judgment motion asserts: that there is "no evidence of any actual damages suffered by" Appellants; the movants' reliance on the "no evidence" procedural grounds of Tex.R. Civ. P. 166a(i); that "there is no evidence of the additional amount of money that [Appellants] claim they would have obtained from the [wrongful death] case, had it been settled differently"; that "even assuming [Appellants] could have won at trial [of the wrongful death suit] ... there is no evidence of the amount of money they would have collected"; that "even if there were a *Stowers* action that [Appellants] could have obtained by assignment [from Dr. Bailey], there is no evidence of the amount of money they would have collected from this alleged *Stowers* action"; that "[t]here is also no evidence that [Appellants] suffered compensable mental anguish as a result of settling the [wrongful death suit] instead of trying it"; that "to survive a 'no evidence' challenge, there must be direct evidence of the nature, duration and severity of [Appellants'] mental anguish"; and "[i]n this case, there is no evidence that [Appellants] suffered compensable mental anguish damages." Based upon the assertions of those "no evidence" grounds, and other grounds, the motion asks the trial court to grant Appellees' motion for summary judgment in its entirety by entering judgment that Appellants take nothing from Appellees.

A defendant's summary judgment motion asserting as grounds that there is "no evidence" forces upon the plaintiff the burden of producing summary judgment evidence that raises a genuine issue of material fact with regard to each cause of action sued upon. *See* Tex.R. Civ. P. 166a(i). If the plaintiff does not satisfy that burden by presenting the trial court with

more than a scintilla of probative evidence on the essential elements, the court must grant summary judgment for the defendant. *See id.*

■ Here, the trial court granted Appellees' motion, entering a written order that does not state specific grounds for the summary judgment that Appellants are not entitled to recover damages from Appellees. A party appealing from a summary judgment that does not recite the grounds on which it is granted assumes the burden of pointing the appellate court to competent summary judgment evidence in the record establishing that none of the independent grounds the motions asserted are sufficient to support the judgment. *See Carr v. Brasher,* 776 S.W.2d 567, 569 (Tex.1989). Consequently, we must affirm if any of the motion's grounds are meritorious. *See id.*

### FLOYD HOLDER'S AFFIDAVIT

■ Appellants opposed Appellees' motion for summary judgment with a written response supported by the affidavit of Floyd Holder, an attorney engaged in a general law practice in Lubbock. His affidavit begins with this:

1. I am an attorney licensed to practice law in the State of Texas. Texas Tech University School of Law conferred a J.D. with highest honors in December 1975. The Supreme Court of Texas and the State Bar admitted me to practice in May 1976.

2. During the past twenty-two years I have maintained a general practice of law.

3. I have reviewed certain files in [Appellants' wrongful death suit].

Holder then describes matters that he believes Brantley and Hammer *discussed with or told* Appellant William Green. Appellees filed their written objection to Holder's affidavit on grounds that the affidavit does not state that Holder has personal knowledge of the matters recited in the affidavit, and because Holder bases his affidavit upon his consideration of inadmissible hearsay, and because Holder's affidavit admits that he is only speculating about the potential outcome of Appellants' wrongful death suit against the doctors, where Holder's affidavit says, for example: "I cannot predict what a jury would have done on the facts of [the wrongful death suit]." The trial court entered an order sustaining Appellees' objections and striking Holder's affidavit, which includes Holder's opinion that the wrongful death suit, which was settled for $850,000 had "at least $750,000 in settlement value."

On appeal, Appellants acknowledge that Holder's affidavit does not state that he has personal knowledge of the facts asserted in it. In their brief, Appellants argue that Holder's affidavit "deals with" [criticizes] Brantley's and Hammer's conduct as Appellants' attorneys for the wrongful death suit. Holder's affidavit recites that Holder accepts as true Appellant William Green's accusations against Brantley and Hammer and, without reciting a standard of care imposed upon Brantley and Hammer, and neither detailing any facts nor disclosing his personal knowledge of any facts that would support Green's accusations that Brantley and Hammer made misrepresentations to Appellants or that misrepresentations, if any, were made *knowingly,* Holder's affidavit asserts abstractly that "a knowing misrepresentation" by an attorney to his client is a breach of the attorney's fiduciary duty. Holder's affidavit does not indicate that he has ever been attorney of record in a wrongful death, medical malpractice, or personal injury suit or that he has any experience in the trial or settlement of such cases.

■ An expert's affidavit offered to support or oppose a summary judgment motion must include proof of the expert's qualifications. *See United Blood Servs. v. Longoria,* 938 S.W.2d 29, 31 (Tex.1997). A license to practice a profession does not inherently qualify the licensee as an expert

in every matter related to the profession. *See Gammill v. Jack Williams Chevrolet, Inc.,* 972 S.W.2d 713, 719 (Tex.1998). Unsupported argument is not evidence and because Holder's affidavit did not present the trial court with evidence of the legal standard for Appellees' fiduciary duty, if any, in the explicit circumstances of the wrongful death suit nor with any factual evidence of the breach of such a duty by Appellees, the trial court did not err by striking Floyd Holder's affidavit when the court considered Appellees' "no evidence" motion for summary judgment. *See* Tex.R. Civ. P. 166a(i); *Miller v. Soliz,* 648 S.W.2d 734, 738 (Tex.App.—Corpus Christi 1983, no writ); *Sorsby v. State,* 624 S.W.2d 227, 235–36 (Tex.Civ.App.—Houston [1 st Dist.]1981, no writ); *Ford Motor Credit Co. v. Galbraith,* 619 S.W.2d 2, 4 (Tex.Civ.App.—Houston [1 st Dist.] 1981, writ ref'd n.r.e.). We overrule Appellants' issue that asserts that Holder's affidavit is competent summary judgment evidence. *See id.*

### DANIEL BARRETT'S AFFIDAVIT

■ One of the affidavits supporting Appellees' motion for summary judgment was that of Fort Worth attorney Daniel Barrett, which includes this:

1. My name is Daniel R. Barrett. I am over the age of 18 years. I am of sound mind and I suffer no legal or other disability that would incapacitate me in any way from making this Affidavit. I am fully competent to testify to the facts and matter stated in this affidavit, and the following facts and matters are within my personal knowledge and are true and correct.

2. I graduated from Texas Tech University School of Law in 1979. I have been admitted to practice law in Texas since 1979 and have been actively practicing law in Texas since my admission to the Texas Bar. I am currently a member in good standing of the Texas, Tarrant County, and American Bar Associations. I am a partner in the Fort Worth law firm of Fielding, Barrett & Taylor.

3. I am Board Certified in Personal Injury Trial Law by the Texas Board of Legal Specialization and as a Civil Trial Advocate by the National Board of Trial Advocacy. I am an Associate in the American Board of Trial Advocates and a Life Fellow of the Texas Bar Foundation. I am also a member in good standing of the American Trial Lawyers Association, Texas Trial Lawyers Association, American Society of Law Medicine and Ethics, and the College of the State Bar of Texas. Attached to this Affidavit as Exhibit "A" is a true and correct copy of my current *curriculum vitae.*

4. For the past eighteen (18) years, I have been engaged primarily in the handling of personal injury cases as a trial lawyer. I have settled and tried to verdict both personal injury and death cases. I am familiar with the duties and responsibilities of attorneys, including attorneys board-certified in personal injury trial law, who practice in the personal injury and wrongful death field of the law and feel qualified to render opinions concerning issues in these matters. I am also familiar with the processes of evaluating, trying, and settling personal injury and death cases, and feel qualified to render opinions concerning these issues. I am familiar generally with settlement values of personal injury and wrongful death cases in Somervell County, Texas.

Barrett's affidavit then identifies materials he has reviewed from the wrongful death suit, including the depositions of Gloria and William Green, their two daughters, Teresa and Tracey, Appellees Brantley and Hammer, Drs. Bailey, Milam, Cohen, Bergstrom, Burrows, and Ross, and the medical records from Kimbro Clinic, Harris Southwest Hospital, Drs. Johnson–Mars, Milam, Bordelon, and Jones. Despite Appellants' contention that Barrett is unqualified to give medical

opinions, the only logical inference we are able to draw from his affidavit is that Barrett reviewed these materials not to evaluate them from a medical standpoint, but rather, as a board-certified lawyer experienced in the trial of personal injury and wrongful death suits, to evaluate the materials from the standpoint of his expertise and knowledge of the principles of law applicable to the information contained in those materials. He expresses no medical opinions in the affidavit, which continues:

6. As an attorney board-certified in personal injury trial law, it is important in evaluating cases for settlement to consider the underlying liability facts involved—in this instance, the underlying liability facts regarding the alleged untimely diagnosis of Gloria Green's inflammatory breast cancer. In this connection, my review of the medical records leads me to believe that, ultimately, all that was available to the [Appellants] in [the wrongful death case] was a claim for "loss of a chance" of survival. The Texas Supreme Court expressly rejected this cause of action in 1993.

It is also important to the settlement evaluation of [Appellants'] underlying wrongful death case to consider the identity and reputation of [Appellees], the conventional attitudes of Somerville County juries, and the reputation of [Appellants] in Somervell County. In this connection, the materials I reviewed led me to believe that the living arrangements between William and Linda Green [former wife of William's cousin] were well known throughout the Somervell County area, and likely would be know[n] to at least some of the jurors in the case. Further, despite the evidentiary prohibition contained in § 71.005, Texas Civil Practice & Remedies Code, a competent defense attorney would be able to impart to the jury enough information to suggest the relationship between William and Linda.

Additionally, I believe that it is important to consider the elements of damage available to each Plaintiff, whether it be an injury case or a death case, the facts supporting these damages, and the losses that occurred to each Plaintiff as a result of the alleged negligence of the medical malpractice defendants.

In forming the opinions expressed in this Affidavit, I have considered all of these factors. I have also considered the legal definitions of proximate and producing cause [which Barrett then recites in the affidavit].

The misrepresentations, non-disclosures, and acts or omissions alleged to have been made or performed by [the wrongful death suit defendants] were neither the producing nor proximate cause of any damage to the Plaintiffs. The Plaintiffs were reasonably and fairly compensated by way of settlement for the cause of action available to [Appellants] as plaintiffs in [the wrongful death suit], taking into account the factors listed above. I have not addressed issues concerning veracity of the allegations of [lawyer malpractice] . . . which allegedly induced [Appellants] to settle [the wrongful death suit]. Irrespective of the validity of those allegations, it is my opinion that [Appellants] have not been damaged as a result of any of [Appellees'] alleged conduct, whether those allegations are true or not.

I understand that [Appellants] assert that various misrepresentations, non-disclosures or acts or omissions allegedly committed by [Appellees] in this case constitute a departure from the standard of care of a reasonably prudent attorney, and a breach of the fiduciary duty that [Appellees] owed to [Appellants]. As a fiduciary, an attorney must behave toward a client with candor, openness and honesty, without concealment or deception, and he must affirmatively disclose to his client all material facts bearing on the client's case. A "material fact" is a fact to

which a reasonable person under the same or similar circumstances would attach importance in determining his course of conduct or action. Furthermore, an attorney board-certified in personal injury trial law is held to the standard of care that would be exercised by a reasonably prudent attorney, board certified in personal injury trial law, acting under the same or similar circumstances.

Taking into account all of the factors listed above, it is my opinion that, even if [Appellees] committed the misrepresentations, non-disclosures, and acts or omissions that [Appellants] allege, [Appellees] did not breach their fiduciary duty to [Appellants], nor fall below the standard of care applicable to a reasonably prudent attorney board certified in personal injury trial law. Even if [Appellees] had informed [Appellants] about the possibility of obtaining an assignment of Dr. Bailey's alleged *Stowers* action, had told them the correct amount of insurance available from Dr. Bailey and Dr. Maley, and had performed an investigation into Dr. Bailey's assets, this information would not have been material to a reasonable person's decision on how to resolve [the wrongful death suit]. No reasonable person armed with this information would have decided to try [that suit] instead of settle it. Likewise, even if [Appellees] had pushed the case to trial more quickly, had deposed Dr. Maley and the employees of Kimbro Medical Center, and had kept [Appellants] more fully advised about the status of their case, no reasonable persons would have resolved the case any differently than it was resolved. Furthermore, even if [Appellees] had fully disclosed or fully performed all of the above things, no reasonably prudent attorney who is board-certified in personal injury trial law would have advised his clients to reject a guaranteed settlement of $850,000 in exchange for the remote possibility of 1) obtaining a judgment against Dr. Bailey for more than

$1 million, 2) obtaining an assignment of any *Stowers* action that Dr. Bailey may have had, *and* 3) successfully prosecuting the *Stowers* action. ...[A] reasonably prudent attorney board-certified in personal injury trial law would have done exactly as [Appellees] did and advised [Appellants] to settle the case.

Relying on the recent Texas Supreme Court opinion in *Burrow v. Arce,* 997 S.W.2d 229 (Tex.1999), Appellants ask us to reject as conclusory Barrett's analysis that Appellants' case against the doctors and Kimbro Medical Center was merely a type of case known in law as a "loss of a chance of survival" case, a cause of action not available in Texas jurisprudence. Notwithstanding Appellants' reliance on *Arce,* the lawyer's summary judgment affidavit at issue in that case contained no explanation why an earlier case's settlement, belatedly complained of by the client, was fair and reasonable for the client, nor did that affidavit contain a reasoned basis that, upon stated knowledge, skill, experience, training, or education, qualified that affiant to state an expert opinion. *See id* at 236. In contrast, Barrett's affidavit thoroughly explains his knowledge, skill, experience, training and education that are the platform for his reasoning and explanation why the $850,000 settlement was fair and reasonable for Appellants. He explained that the history of Gloria's medical condition and treatments left Appellants with only a non-viable cause of action for "loss of a chance of survival," and that a trial of that cause of action in Texas would not have achieved a recovery of money damages for Appellants. Barrett also opined as an expert that Appellants would have been unable to prove causation in their suit for wrongful death and that because the cohabitation of William and Linda began soon after Gloria died, and was a fact well known in Somervell County, it was unlikely that the jurors of that county would favorably view William's action seeking more than $850,000 in damages for Gloria's death. Barrett's affidavit is not concluso-

ry. As a matter of law, it is sufficient to negate the elements of causation and damage. We overrule Appellants' issue complaining that Barrett's affidavit is not competent summary judgment evidence that supports Appellees' motion for summary judgment.

## AFFIDAVIT OF DAVID PLOTKIN, M.D.

■ Appellants also maintain that the trial court erred by considering in support of Appellees' summary judgment motion the affidavit of David Plotkin, M.D., an expert in the diagnosis and treatment of inflammatory breast cancer, because Dr. Plotkin was never identified as a witness in the wrongful death suit. Dr. Plotkin's affidavit recites that his opinions are based upon a reasonable degree of medical probability and upon his described medical education, training and experience, and his review of Gloria's medical records from the physicians and hospitals named in the affidavit. Dr. Plotkin opines that "the diagnosis of [Gloria's] breast cancer could have reasonably been made [by Dr. Bailey when he examined Gloria] in this patient in September 1991" but that even then Gloria "had a zero percent (0%) chance of survival in August 1991 or September 1991. Therefore, it is my opinion that Dr. Bailey's and Dr. Maley's failure to diagnose Gloria Green with inflammatory breast cancer [at that time] was not a proximate or producing cause of her death."

Appellants emphasize that in order to succeed in an action to recover damages for alleged malpractice by their own lawyer in a prior suit, they must prove "a suit within a suit" by showing the trial court in the current case that he would have prevailed in the prior suit but for his lawyer's negligence. See Mackie v. McKenzie, 900 S.W.2d 445, 449 (Tex.App.—Texarkana1995, writ denied) (a lawyer malpractice suit arising from a will contest that was based upon allegations that the will's provisions were the result of a lawyer's undue influence). Appellants argue that the trial court in the current lawyer malpractice case had no authority to consider the affidavit of Dr. Plotkin because he was not identified as a witness in the wrongful death suit and that factor makes his affidavit irrelevant for the lawyer malpractice suit. Appellants contend that the "suit within a suit" principle of Mackie requires that a jury in the lawyer malpractice case will be unable to determine whether Appellants probably would have won the wrongful death suit unless the lawyer malpractice jury has the opportunity to see and hear the identical witnesses and evidence that would have been presented in the 1995 Somervell County wrongful death trial had there been no settlement of that suit.

We are not persuaded, and do not find that premise within the text of the Mackie opinion. Moreover, we conclude that the extension of Appellants' premise to this case could require the unlikely and unrealistic effort to duplicate the 1995 jury pool, and, theoretically, the trial jury's members, that jury's theoretical verdict, and even some sort of speculative application of the Stowers doctrine and a conjectural determination of whether Dr. Bailey might have someday assigned to Appellants a theoretical Stowers action, if any. Appellants have cited no authority supporting their interpretation of the "suit within a suit" principle. We overrule Appellants' issue that contends the trial court erred by considering Dr. Plotkin's affidavit in support of Appellees' summary judgment motion.

## DAMAGES

■ Among other things, Appellees' "no evidence" motion challenged Appellants' claims that they incurred damages by accepting $850,000 to settle the wrongful death suit. The trial court properly struck Holder's affidavit, offered by Appellants, because it contained no evidence of damages and even conceded that the wrongful death suit's settlement value was at least $750,000 and that he could not

predict what a jury would have done in the suit. The settlement brought Appellants $100,000 more than that. Barrett's affidavit opined that Appellants' cause of action in the wrongful death suit was based upon "a loss of a chance of survival," and because that cause of action is not recognized by Texas courts, this would have prevented Appellants from obtaining a verdict on a "loss of a chance" theory. Without a verdict for more than $1 million, there could not have been a theoretical *Stowers* action available to Dr. Bailey or available for a *theoretical* assignment by him to Appellants. In other words, in response to Appellees' "no evidence" summary judgment motion, Appellants failed to carry their burden of presenting competent evidence of either a breach by Appellees of a fiduciary duty to Appellants or the amount of money Appellants would have won and collected in the wrongful death suit or the theoretical *Stowers* action if there had been no settlement. The most Appellants did in their response was present the trial court with a weak surmise or suspicion of a fact, that amounts to "no evidence." *See Jackson v. Fiesta Mart, Inc.*, 979 S.W.2d 68, 70 (Tex.App.—Austin 1998, no pet.).

 In addition to the economic damages Appellants allegedly suffered because of Appellees' conduct, Appellants' current cause of action based on claims of lawyer malpractice seeks damages for mental anguish that Appellants say resulted from their alleged economic losses inherent in their acceptance of only $850,000 to settle the wrongful death suit. Appellees argue accurately that the record contains no evidence that Appellants suffered mental anguish by settling instead of trying the wrongful death suit. To the contrary, Appellant William Green testified at his deposition that he and his children decided that if the doctors' insurers would pay them $750,000, they would accept it and settle the wrongful death suit rather than go through the stress of a trial. Moreover, the Texas Supreme Court has made it clear that when a lawyer's client or

former client proves in a lawyer malpractice action that he or she has suffered economic injuries caused by the lawyer's negligence, the plaintiff may not recover additional damages for mental anguish allegedly connected to the economic loss. *See City of Tyler v. Likes*, 962 S.W.2d 489, 497 (Tex.1997); *Douglas v. Delp*, 987 S.W.2d 879, 885 (Tex.1999).

## ATTORNEY FEE FORFEITURE

 Appellants also claim that even without proof of causation or damages, they have shown that Appellees breached a fiduciary duty owed to Appellants in their attorney-client relationship and therefore Appellees are entitled to have a court order Appellees to forfeit the attorney fee Appellees were paid from the $850,000 settlement of the wrongful death suit. *See Arce v. Burrow*, 958 S.W.2d 239, 251 (Tex.App.—Houston [14th Dist.] 1998) (op. on reh'g), *rev'd in part on other grounds*, 997 S.W.2d 229 (Tex.1999). Nevertheless, the summary judgment record contains no evidence establishing that Appellees breached a fiduciary duty to Appellants. We overrule Appellants' issue that contends there are genuine issues of material fact about their alleged damages.

## CONCLUSION

We have overruled each of the issues Appellants present on appeal. Because each of Appellees' "no evidence" grounds asserted in their motion for summary judgment is meritorious, and because Appellants have not directed us to competent summary judgment evidence in the record to establish that none of the independent grounds asserted in Appellees' motion is sufficient to support the summary judgment, we conclude that the trial court did not err by granting a summary judgment that Appellants take nothing against Appellees. We affirm the trial court's judgment.