NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

16-P-183                                          Appeals Court

   JOHN DOE  vs.  AMERICAN GUARANTY AND LIABILITY CO. & others.[1]


                        No. 16-P-183.

        Essex.     November 8, 2016. - March 1, 2017.

          Present:  Wolohojian, Milkey, & Shin, JJ.

Attorney at Law, Malpractice, Communication with represented
     party.  Evidence, Legal malpractice, Privileged
     communication.  Privileged Communication.  Waiver.
     Practice, Civil, Motion to dismiss.



     Civil action commenced in the Superior Court Department on
March 17, 2015.

     Motions to dismiss were heard by Robert A. Cornetta, J.


     Michael A. Tucker for the plaintiff.
     William T. Bogaert for George Rockas.
     Marissa I. Delinks for H. Ernest Stone.
     Jonathan Small for American Guaranty and Liability Co.


     MILKEY, J.  Attorney H. Ernest Stone represented John Doe

in a criminal case and a related tort action.  In the course of

that representation, Doe relayed certain information to Stone

that all parties indisputably agree was subject to attorney-

─────────────
     [1] H. Ernest Stone and George Rockas.

client privilege.  After the tort action ended in a default judgment against Doe, Doe brought a legal malpractice action against Stone based on his handling of the tort case.  The malpractice action concluded via a settlement agreement.  Doe next filed a complaint in the Superior Court alleging that in defending the malpractice action, Stone misused the privileged information he received during his earlier representation of Doe.  Doe named as defendants Stone; George Rockas, the attorney who represented Stone in the malpractice action; and American Guaranty and Liability Co. (American), Stone's legal malpractice insurer.  The defendants filed motions to dismiss, raising a wide variety of defenses.[2]  See Mass.R.Civ.P. 12(b), 365 Mass. 754 (1974).  The judge allowed the motions and judgment entered dismissing the complaint.  Doe appeals.  Because we agree with the motion judge that in bringing the malpractice action, Doe waived the privilege that otherwise applied to the information at issue, we affirm.  Resolving the case on that ground, we have no occasion to reach the defendants' other defenses.

---

[2] The defendants argued then, and continue to argue on appeal, that the intentional disclosure of privileged information does not exist as an independent cause of action; Rockas and American owed Doe no duty to protect the information; the disclosure of the information was protected by a litigation privilege; Doe waived the privilege by bringing the malpractice action; Doe suffered no cognizable damages; and an insurer cannot be liable without engaging in a more active role in the litigation than American did here.

Background. As noted, this appeal involves four related actions. We begin by summarizing those actions in the order they were brought, reserving certain details for later discussion. Our factual recitation is drawn from the allegations set forth in the amended complaint in the action before us, supplemented by background facts drawn from the attachments to that complaint and documents that recount the course of the earlier proceedings. See Shaer v. Brandeis Univ., 432 Mass. 474, 477 (2000), quoting from 5A Wright & Miller, Federal Practice and Procedure § 1357, at 299 (1990) ("In evaluating a rule 12[b][6] motion, we take into consideration 'the allegations in the complaint, although matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint, also may be taken into account'").[3] See also Mass.R.Civ.P. 10(c), as amended, 456 Mass. 1401 (2010) ("A copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes"); Johnston v. Box, 453 Mass. 569, 581 n.19 (2009) (judges may consider exhibits attached to complaint without converting

_____

[3] It bears noting that "[i]n the motion [to dismiss] and opposition, the parties [all] made reference to facts and documents . . . extrinsic to the pleadings," and no "party appears to claim any factual disagreement with them or prejudice from their being considered." Golchin v. Liberty Mut. Ins. Co., 466 Mass. 156, 159 (2013) (allowing such extrinsic material to be considered as if motion for judgment on pleadings had been motion for summary judgment).

motion to dismiss to one for summary judgment); Reliance Ins. Co. v. Boston, 71 Mass. App. Ct. 550, 555 (2008) (in evaluating motion brought pursuant to Mass.R.Civ.P.12[b][6], court may take judicial notice of court records in related proceedings).

1.  Criminal proceeding.  Doe served as the foster father of two children.  Based on allegations of abuse raised by one of those children (Foster 1), the Commonwealth charged the defendant with assault and battery.  During the course of Stone's representation of Doe in the criminal matter, Doe confided that he had sexually abused the second foster child (Foster 2) who was living in Doe's home at the same time as Foster 1.  The criminal case ended in a plea in which Doe pleaded guilty to assault and battery.

2.  Tort action.  Foster 1 then filed a complaint in the Superior Court against Doe alleging physical and sexual abuse. Doe hired Stone, who had represented him in the criminal matter, to represent him in the tort action.  After Stone failed to file answers to interrogatories propounded by Foster 1, the tort action ended in a default judgment against Doe under which Doe was ordered to pay Foster 1 over $400,000 in damages and interest.  It is uncontested that when the default judgment entered, discovery had not been completed; Doe not only had failed to answer Foster 1's interrogatories, he had not yet been deposed.

3.  Malpractice action.  Doe then brought a legal malpractice action against Stone.  In that case, Stone was represented by Rockas, who was hired by American, Stone's legal malpractice insurer.  Stone told Rockas the information Doe had revealed about his abuse of Foster 2, and Rockas used a private investigator and information contained in Stone's case files related to his representation of Foster 1 to locate Foster 2.

After it became apparent that Rockas intended to defend the malpractice action in part based on Doe's abuse of Foster 2, Doe's attorney warned Rockas and American against making use of any privileged information that Doe had revealed to Stone. Rockas pressed forward and filed a motion to compel deposition testimony from Doe regarding Foster 2.  In support of that motion, Stone filed an affidavit setting forth Doe's statement that he had sexually assaulted Foster 2.  The motion to compel was allowed over Doe's opposition.  Doe also unsuccessfully sought to amend his complaint in the malpractice action to include counts alleging that Stone, by and through Rockas, had misused privileged information.

Shortly thereafter, the malpractice action was resolved by a mediated settlement.  The settlement included not only the parties to the malpractice action (Doe and Stone), but Foster 1 as well.  In this manner, the settlement resolved both the malpractice action and the postjudgment collection proceedings

in the tort action.  Under the terms of the settlement, $175,000 in insurance proceeds were to be divided among Foster 1 and the attorneys for both Foster 1 and Doe.  Doe also agreed to provide Foster 1 with a promissory note for an additional $250,000, secured in part by a line of credit.  Finally, Doe released Stone from "all claims that were or could have been asserted against him as of the date of the filing of [the malpractice action] but shall not release him . . . or any other party of other claims."[4]

4.  Current action.  Almost two years after the malpractice action was settled, Doe brought the current action against Stone, Rockas, and American.  In it, Doe alleges that in defending the malpractice action, the defendants intentionally misused privileged information regarding Doe's statement that he abused Foster 2.[5]  Although it is uncontested that during the

---

[4] All parties appear to agree that the reservation language was intended to preserve Doe's ability -- to the extent it otherwise existed -- to pursue the current action (even though the malpractice action and the current action are closely intertwined).

[5] The amended complaint in the current action sets forth two counts.  Count I is similar to the claims that Doe unsuccessfully sought to add to the malpractice action, although it includes Rockas as an additional defendant.  Count II, brought against American only, alleges unfair settlement practices in violation of G. L. c. 176D and G. L. c. 93A.

tort action Foster 1 claimed that Doe also had abused Foster 2,[6] the complaint in the current action alleges that Foster 1's attorney was unaware of Foster 2's whereabouts at that time. Based on this, Doe alleges that Foster 2 therefore would not have played any role in the tort action.[7]  Doe further contends

---

[6] Specifically, Foster 1 stated in answers to interrogatories in the tort action:

"When [Doe] procured another foster child, [Foster 2], who was nine or ten at the time, [Foster 2] was forced to sleep in [Doe's] bed, rather than in the twin bed in my room -- [Foster 2] cried about this.  At this time, the physical abuse with me escalated.  I knew, by this time, that [Doe's] treatment of me was grossly inappropriate, and I was disgusted with how the same thing was happening with [Foster 2]."

[7] The complaint states in pertinent part as follows:

"Rockas and Stone knew and were on actual notice that Foster 2's whereabouts were entirely unknown to [Foster 1's] attorney throughout the [tort] litigation . . . .

"In fact, [Foster 1's] attorney told Stone and Rockas that while he knew of the existence of Foster 2, he had no way to find [Foster 2] and could not have used [Foster 2] at trial. . . .

"[Foster 2] would never have been a part of the underlying case. . . ."

At oral argument, Doe informed the court that this allegation was based on Foster 1's attorney's deposition in the malpractice case.  Relevant portions of the transcript of that deposition were included in the motion to dismiss record.  See Marram v. Kobrick Offshore Fund, Ltd., 442 Mass. 43, 45 n.4 (2004) ("Where, as here, the plaintiff had notice of [certain] documents and relied on them in framing the complaint, the attachment of such documents to a motion to dismiss does not convert the motion to one for summary judgment").  An attachment to Doe's complaint in the current case indicates that the source

that the defendants' use of the information with respect to Foster 2 gave them undue leverage in the malpractice action and that he otherwise would have obtained a greater recovery in that case. He also alleges that the defendants' use of the privileged information exposed him to additional civil and criminal liability, although he does not claim, and nothing in the record suggests, that Foster 2 has sued him or that the Commonwealth has brought criminal charges based on the sexual abuse of Foster 2.[8]

Discussion. Doe's statement to Stone that he had abused Foster 2 indisputably was subject to attorney-client privilege. See Mass. G. Evid. § 502(b)(1) (2016). The question is whether Doe waived that privilege by bringing the malpractice action. That question "turns on whether the disclosure is relevant, material, or necessary to defend against the [malpractice] charge." Commonwealth v. Woodberry, 26 Mass. App. Ct. 636, 637 (1988), citing Commonwealth v. Brito, 390 Mass. 112, 119 (1983). Thus, if evidence of Doe's statement regarding Foster 2 was relevant to the malpractice action, the privilege was waived.

---

of the difficulty that Foster 1's attorney faced in trying to locate Foster 2 is that his young client did not know Foster 2's last name.

[8] We note that the current action was impounded following a motion jointly submitted by the parties.

The dispute over relevance is a narrow one. The parties agree that if Foster 2 had been called as a witness in the tort case, Foster 2's testimony that Foster 2 also had been abused during the same time period and in the same household as Foster 1 would have been admissible in that case. See Commonwealth v. Hanlon, 44 Mass. App. Ct. 810, 817 (1998), quoting from Commonwealth v. King, 387 Mass. 464, 470 (1982) (even in criminal context, evidence of prior uncharged sexual abuse "when not too remote in time, 'is competent to prove an inclination to commit the [acts] charged . . . and is relevant to show the probable existence of the same passion or emotion at the time in issue'").

In turn, the admissibility of such testimony in the tort action makes it substantively relevant to the malpractice action.[9] That is because in the malpractice case, the extent of any damages that Doe suffered as a result of Stone's negligent representation rests on what the result of the tort case otherwise would have been (an issue to be resolved in the portion of a malpractice action known as the "trial within a trial"). See Glenn v. Aiken, 409 Mass. 699, 706 (1991) ("In a

---

[9] We do not mean to suggest that Doe's statement to Stone would be relevant to the malpractice action only if Foster 2 could have testified in the tort action. We note that regardless of whether Foster 2 was available to testify, Foster 1 still presumably could have testified about what Foster 1 may have observed regarding Doe's abuse of Foster 2.

malpractice action claiming that counsel for the defendant in a civil case was negligent, the defendant attorney can prevail by proving by a preponderance of the evidence that, even though he may have been negligent, the plaintiff, his former client, would have lost the underlying case anyway").  See generally Fishman v. Brooks, 396 Mass. 643, 647 (1986) (discussing "traditional approach" in legal malpractice action under which "[t]he original or underlying action is presented to the trier of fact as a trial within a trial" in order to determine damages caused by attorney's negligence).

While conceding that Doe's abuse of Foster 2 in fact was substantively relevant to the malpractice action, Doe contends that Foster 2 was not available to testify in the tort action, because Foster 2's whereabouts were unknown.  On this basis, Doe claims that his abuse of Foster 2 could not have come out in the tort action, and hence could not be relevant to the malpractice action.  Thus, Doe's claim that he did not waive his privilege rests on his contention that Foster 2 was unavailable in the tort action.  Before turning to that issue, we note two points regarding the lens through which the availability issue should be viewed.

First, it is important to keep in mind that in the "trial within a trial" portion of a legal malpractice case, what would have occurred in the underlying litigation had the attorney not

been negligent "must be decided on an objective basis." Glenn
v. Aiken, supra at 703 (affidavit by trial judge in underlying
criminal case stating that ruling would have been same had
defense lawyer raised objection held irrelevant to subsequent
civil malpractice action).  That is, in the malpractice action,
the worth of the underlying litigation is to be based on how
that litigation "should" have gone, not on how any specific
lawyers (or judges) actually would have proceeded.  See Mallen,
Legal Malpractice § 37:87 at 1677 (2016).  See also Green v.
Brantley, 11 S.W.3d 259, 267 (Tex. App. 1999) (rejecting
argument that trial within trial in legal malpractice case had
to be limited to identical witnesses and evidence that would
have been presented in underlying action).  Doe's allegation
that Foster 2 would not have been located must be assessed in
this light.

Second, although in reviewing the allowance of a motion to
dismiss we generally are required to accept the allegations of
the complaint as true, those allegations "must be enough to
raise a right to relief above the speculative level."
Iannacchino v. Ford Motor Co., 451 Mass. 623, 636 (2008),
quoting from Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555
(2007).  "What is required at the pleading stage are factual
'allegations plausibly suggesting (not merely consistent with)'
an entitlement to relief. . . ."  Ibid., quoting from Bell Atl.

Corp. v. Twombly, supra at 557. A complaint is insufficient if it rests on "naked assertions" devoid of "further factual enhancement." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice"). In assessing the sufficiency of the complaint's allegations, we can examine them in the context presented by the underlying proceedings. See United States Telesis, Inc. v. Ende, 64 F. Supp. 3d 65, 68-69 (D. D.C. 2014) (allowing dismissal of legal malpractice action on grounds that plaintiff had not plausibly alleged that it could have prevailed in underlying contract action, where record in underlying action -- of which court took judicial notice -- revealed that type of damages plaintiff sought would have been foreclosed).

With these principles in mind, we turn to the details of the availability issue. In the procedural context of this case, we are required to accept as true the allegation that during the tort action, Foster 1's attorney was unaware of Foster 2's whereabouts. As noted, the complaint here further alleges that because of the attorney's lack of knowledge of Foster 2's whereabouts, he in fact could not have used Foster 2 as a witness in the tort case. To the extent that this allegation speaks to what Foster 1's attorney in particular would have been able to do had the tort action proceeded to trial, it is

irrelevant.  See Glenn v. Aiken, 409 Mass. at 703.  Even if we view the complaint liberally as alleging that a reasonably competent attorney representing Foster 1 would not have been able to locate Foster 2, what is left is a bare conclusory statement as to what would have occurred had the tort action not ended in a default judgment while discovery was still pending. The remaining allegations of the complaint do not support that conclusion.  To the contrary, the complaint points out that Rockas was able to locate Foster 2 with information from Stone's files.  The complaint offers no explanation as to why, had the discovery in the tort action gone forward, Doe could have kept secret Foster 2's last name (or whatever other background information Rockas used to locate Foster 2), or why Foster 1's attorney could not have obtained the missing information from other sources.[10]  See Lopez v. Commonwealth, 463 Mass. 696, 712 (2012), quoting from Ashcroft v. Iqbal, 556 U.S. at 679 (determining whether complaint plausibly alleges claim for relief requires reviewing court to "draw on its judicial experience and common sense").

Viewing the allegations of the complaint in the context of the undisputed background facts, we conclude that Doe's

---

[10] We note that the Executive Office of Health and Human Services, which includes the Department of Social Services (now known as the Department of Children and Families) originally was a codefendant in the tort action.

assertions that Foster 2 would not have been located if the tort action had gone forward amount to "naked assertions" devoid of "further factual enhancement."  Ashcroft v. Iqbal, supra at 678 (quotation omitted).  As a matter of law, the Foster 2 issues were relevant to the malpractice action, and they are not rendered irrelevant by Doe's conclusory suggestions that Foster 2's whereabouts would have remained unknown.  It follows that by bringing the malpractice action, Doe waived his privilege with respect to information related to Foster 2.  Accordingly, none of the defendants could be liable for their use of that information in defending the malpractice action, and their motions to dismiss were properly allowed.

Judgment affirmed.