# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-03-00125-CV

**Mary Goeth and Joe Goeth, Appellants**

**v.**

**Craig, Terrill & Hale, L.L.P.; Grady Terrill; Baker & Botts L.L.P.; Steve A. Claus; and Phillips, Claus & Associates, Appellees**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 261ST JUDICIAL DISTRICT NO. GN101667, HONORABLE SCOTT JENKINS, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

This appeal stems from a legal malpractice lawsuit filed by Mary Goeth and Joe Goeth (appellants) against two attorneys and three law firms (appellees). The trial court granted traditional motions for summary judgment in favor of all appellees. The main question presented on appeal is whether appellants, in their individual capacities, have standing to sue for injuries to a corporation. Because we hold that appellants lack standing to bring corporate claims, we affirm the summary judgment.

### BACKGROUND

Prior to 1993, the Goeths owned stock and served as officers and directors for a corporation called Tips Iron & Steel Company, Inc. ("Tips"). On May 12, 1993, the Goeths transferred their respective shareholder interests in Tips to separate, irrevocable living trusts. At this

time, 300 Baylor Inc., co-owned by Steve Wimberly, entered into a Management Agreement with Tips in order to help Tips reach profitability. The agreement contemplated that in exchange for reaching a specific target for profitable operation of the business (resulting in a specified dividend payment by Tips), Tips would grant 300 Baylor the option to purchase all the shares of Tips. In 1994, 300 Baylor sued Tips, claiming the Goeths breached the 1993 Management Agreement between 300 Baylor and Tips. The Goeths retained appellees Grady Terrill and Craig, Terrill & Hale, L.L.P (collectively "Terrill") primarily to represent Tips and the Goeths in the suit and additionally retained Steve Claus and Phillips, Claus & Associates (collectively "Claus") to perform litigation services and assist with relevant accounting issues in the suit. The 1994 lawsuit eventually ended with the execution of a 1995 Settlement Agreement. The Settlement Agreement contemplated that the Management Agreement would remain in force and that the board of directors of Tips would expand from two to five.

In early February 1996, 300 Baylor filed its second lawsuit against the Goeths (in their individual capacities), Tips, and others. 300 Baylor claimed that the Goeths and Tips breached both the 1993 Management Agreement (by not allowing 300 Baylor to exercise its option to acquire Tips after Tips declared the specific dividends) and the 1995 Settlement Agreement (by increasing the size of the board of directors from five to nine and other acts). 300 Baylor additionally claimed the Goeths were engaged in fraud and tortious interference. Terrill and Claus defended the Goeths and Tips against 300 Baylor's claims. In response to 300 Baylor's claims, Terrill filed a derivative claim on behalf of Tips against 300 Baylor's principal, Steve Wimberly, alleging breach of fiduciary duty and that Wimberly was the one who breached the Management and Settlement Agreements. Terrill

2

additionally filed counterclaims on behalf of the Goeths against 300 Baylor, alleging breach of the Management and Settlement Agreements. In and after August 1996, the Goeths and Tips retained appellee Baker Botts, L.L.P. as local counsel in the underlying suit.

The Goeths and Tips proceeded to trial in January 1999, represented only by Terrill and Claus. No claims against Joe and Mary Goeth were submitted to the jury; the district court entered a directed verdict in favor of the Goeths on all claims made against them individually. 300 Baylor's claims against Tips, however, were submitted to the jury and the jury returned a verdict against Tips for breach of contract. The jury additionally found in favor of Wimberly on the derivative claims brought on behalf of Tips. As to the Goeths' counterclaims against 300 Baylor, the jury found that 300 Baylor breached the agreements. However, the jury then found that Tips's prior repudiation of the agreements excused 300 Baylor's breach, effectively canceling the Goeths' counterclaims. The court entered a judgment in favor of 300 Baylor and against Tips in the amount of $2,538,105, plus interest and attorney's fees, but did not enter any judgment against either Joe or Mary Goeth individually.

Tips subsequently filed for bankruptcy and in September 1999, the Goeths entered into a written settlement agreement with 300 Baylor and Wimberly in the Tips bankruptcy proceeding. In this settlement agreement, the Goeths surrendered all claims of ownership to Tips (by agreeing that their trusts, the Joseph A. Goeth Living Trust and the Mary L. Goeth Living trust, would give up their stock ownership in Tips), agreed to withdraw as officers and directors of Tips, and agreed to approve the bankruptcy plan proposed for Tips by 300 Baylor. The Goeths additionally agreed to abandon all appeals from the adverse judgment entered in the second lawsuit.

In May 2001, Joe and Mary Goeth, individually, filed a legal malpractice lawsuit against appellees. Tips was not a party to this suit. The Goeths claimed that appellees committed malpractice by: (1) advising Tips's board of directors to increase from five to nine directors; (2) advising Tips to terminate the Management Agreement with 300 Baylor in February 1996; and (3) failing to reach the level of care required by attorneys, which allegedly caused the Goeths to lose their individual counterclaims against 300 Baylor in the January 1999 trial. The Goeths claimed that the alleged malpractice caused the following damages: (1) loss of value of their business, Tips; (2) loss of the property on which Tips was located (Tips owned the property, not the Goeths);[1] and (3) loss of property that Mary Goeth once owned in her individual name.

The district court granted summary judgments in favor of all appellees. This appeal followed.

## DISCUSSION

The Goeths' first, third, and fourth points of error assert that the trial court erred in granting summary judgment in favor of Baker& Botts, Terrill, and Claus, respectively. In their second point of error, the Goeths contest the trial court's decision to strike and exclude certain summary judgment evidence. In their brief, the Goeths rely on statements made in the excluded summary judgment evidence in their attempt to overturn the summary judgments. Therefore, we will first address the trial court's evidentiary decision before approaching the substance of the trial court's summary judgments.

---

[1] The real property upon which Tips operated was located at 300 Baylor Street, close to the intersection of North Lamar and Sixth Street in Austin, Texas.

4

**Summary Judgment Affidavits**

In response to the appellees' motions for summary judgment, the Goeths filed one consolidated response with attached affidavits from Mary Goeth, Joe Goeth and their expert, Judge C.L. Ray. Appellees subsequently filed objections to portions of the affidavits. At the summary judgment hearing, the trial court excluded certain testimony from these affidavits. In their second point of error, the Goeths assert the trial court erred in excluding this evidence.

Specifically, the appellees objected to a statement in Mary Goeth's affidavit in which she claimed she was a shareholder of Tips at all times material to the suit. Joe Goeth's affidavit was substantially identical to Mary Goeth's affidavit. The summary judgment record, however, includes copies of stock certificates certifying that in 1993, the Mary L. Goeth Living Trust and Joseph A. Goeth Living Trust were formed to take ownership of the Goeths' respective shares of Tips. In addition, prior deposition testimony by both Mary and Joe Goeth confirmed the trusts' ownership of the shares: "Q: You didn't own any shares individually, after May 12th, 1993 in Tips? A: No. [Joe Goeth]." Furthermore, in 1996, Tips's corporate counsel sent a letter to all shareholders requesting evidence of ownership. In response, both Mary Goeth and Joe Goeth signed affidavits stipulating that the Mary L. Goeth Living Trust and the Joseph A. Goeth Living Trust owned 435.44 and 436.4 shares, respectively, of Tips's stock. Therefore, the summary judgment affidavit statements were in direct conflict with the Goeths' prior deposition testimony and authenticated documents.

The exclusion of evidence rests within the sound discretion of the trial court. *Porter v. Nemir*, 900 S.W.2d 376, 381 (Tex. App.—Austin 1995, no writ). The trial court abuses its

discretion only when it acts in an unreasonable or arbitrary manner, or acts without reference to any guiding principles. *Id.* A party "cannot file an affidavit to contradict his own deposition testimony without any explanation for the change in the testimony, for the purpose of creating a fact issue to avoid summary judgment." *Elson Thermoplastics v. Dynamic Sys., Inc.*, 49 S.W.3d 891, 901 (Tex. App.—Austin, 2001, no pet.) (citing *Farroux v. Denny's Rests., Inc.*, 962 S.W.2d 108, 111 (Tex. App.— Houston [1st Dist.] 1997, no pet.)). Such an affidavit presents no more than a "sham" fact issue. *Id.* Without any reasonable explanation provided by the Goeths for their alteration in testimony, the trial court did not abuse its discretion by excluding the summary judgment affidavits. Thus, the Goeths were properly prevented from asserting their shareholder status in Tips.

The Goeths additionally argue that much of the pleadings entered in their lawsuit with 300 Baylor and the bankruptcy settlement refer to the Goeths individually as shareholders in Tips rather than trustees. However, pleadings are generally not competent summary judgment evidence, even if sworn or verified. *See Laidlaw Waste Sys., Inc. v. City of Wilmer*, 904 S.W.2d 656, 660 (Tex. 1995); *Hidalgo v. Surety Sav. & Loan Ass'n*, 462 S.W.2d 540, 545 (Tex. 1971). Therefore, we conclude that the trial court acted with reference to guiding principles and did not err in excluding the Goeths' affidavits.

The trial court additionally struck portions of an affidavit by the Honorable C.L. Ray. In Texas, a plaintiff in a legal malpractice suit is required to present expert testimony regarding the standard of skill and care ordinarily exercised by an attorney. *Hall v. Rutherford*, 911 S.W.2d 422, 424 (Tex. App.—San Antonio 1995, writ denied). A party seeking affirmative relief must designate all experts ninety days before the end of the discovery period. *See* Tex. R. Civ. P. 195.2(a). This

was a Discovery Level 2 case, and the Goeths did not establish good cause for the failure to designate an expert within the ninety day limit; nor does the record show that the Goeths could establish that appellees would not be unfairly surprised or prejudiced. We conclude that the trial court did not abuse its discretion in excluding Judge Ray's affidavit. *See Ersek v. Davis & Davis*, 69 S.W.3d 268, 271 (Tex. App.—Austin 2002, pet. denied) (affidavit of expert not timely designated under Tex. R. Civ. P. 195.2(a) properly excluded at summary judgment hearing).

We overrule the Goeths' second point of error. With the evidentiary questions settled, we now determine whether the trial court erred in concluding as a matter of law that appellees were entitled to summary judgment.

## Summary Judgment Standard of Review

Because this appeal comes from a grant of summary judgment in favor of appellees, we begin with the appropriate standard of review. Because the propriety of a summary judgment is a question of law, we review the trial court's decision *de novo*. Tex. R. Civ. P. 166a(c); *see also Rodriguez v. Naylor Indus., Inc.*, 763 S.W.2d 411, 413 (Tex. 1989)*.* The standards for reviewing a traditional motion for summary judgment are well established: (1) the movant for summary judgment has the burden of showing that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law; (2) in deciding whether there is a disputed material fact issue precluding summary judgment, evidence favorable to the nonmovant will be taken as true; and (3) every reasonable inference must be indulged in favor of the nonmovant and any doubts resolved in its favor. Tex. R. Civ. P. 166a(c); *see also American Tobacco Co. v. Grinnell*, 951 S.W.2d 420, 425 (Tex. 1997).

7

In this case, appellees alleged several grounds in their respective motions for summary judgment, but no one ground was specified by the trial court. When the trial court has not stated the grounds for granting the motion, we may affirm the judgment if any of the theories advanced are meritorious. *See State Farm Fire & Cas. Co. v. S.S.*, 858 S.W.2d 374, 380 (Tex. 1993) (citing *Rogers v. Ricane Enter. Inc*., 772 S.W.2d 76, 79 (Tex. 1989)). We find merit in the following theories presented by appellees in favor of summary judgment: (1) the Goeths lacked standing to sue for harm to the corporation, Tips; (2) the Goeths were not entitled to any damages for their loss of counterclaims in the underlying suit; and (3) the Goeths were not entitled to attorney's fees and costs in prosecution of their claims.

**Standing**

To maintain suit, the plaintiff must have standing to litigate the matters at issue. *Hunt v. Bass*, 664 S.W.2d 323, 324 (Tex. 1984). Standing is an element of subject matter jurisdiction and cannot be waived. *Texas Ass'n of Bus. v. Texas Air Control Bd.,* 852 S.W.2d 440, 445 (Tex. 1993). Standing requires a breach of a legal right belonging to the plaintiff and a showing that the plaintiff is personally aggrieved. *Nootsie, Ltd. v. Williamson County Appraisal Dist.,* 925 S.W.2d 659, 661 (Tex. 1996); *Develo-Cepts, Inc. v. City of Galveston,* 668 S.W.2d 790, 794 (Tex. App.—Houston [14th Dist.] 1984, no writ). Whether a party has standing is a question of law. *A & W Indus., Inc. v. Day,* 997 S.W.2d 738, 741 (Tex. App.—Fort. Worth, 1998, no pet.).[2]

_____

[2] Because we find the threshold issue of standing dispositive in affirming the summary judgments, we need not fully reach appellees' additional summary judgment grounds of proximate cause and limitations.

**Harm to the Corporation**

As support for their arguments that they have been personally aggrieved, the Goeths direct us to many cases that they assert stand for the proposition that they may recover damages relating to the "diminishment of the value of Tips." These cases, however, actually illuminate that precisely this type of "loss of value" damages belongs solely to the corporation and thereby these cases restrict shareholders' standing to sue.[3]

An attorney malpractice action in Texas is based on negligence and requires proof of four elements: the existence of a duty, the breach of that duty, that the breach was a proximate cause of damages, and that the plaintiff was damaged. *Cosgrove v. Grimes*, 774 S.W.2d 662, 665 (Tex. 1989). Privity, which refers to the contractual connection or relationship existing between attorney and client, is directly related to the existence of duty and is therefore necessary for a plaintiff to have standing to bring a legal malpractice claim. *Thompson v. Vinson & Elkins,* 859 S.W.2d 617, 621 (Tex. App.—Houston [1st Dist.] 1993, writ denied).

Texas does not recognize a cause of action for legal malpractice asserted by a party not in privity with the offending attorney. *Barcelo v. Elliott*, 923 S.W.2d 575, 577-78 (Tex. 1996);

---

[3] The trial court's exclusion of certain summary judgment evidence shows that the Goeths' shareholder interests in Tips were actually held by living trusts. Even if we had held that the court erred, we must still find that the error was reasonably calculated to cause and probably caused rendition of an improper judgment. *See* Tex. R. App. P. 44.1(a)(1); *Gee v. Liberty Mut. Fire Ins. Co.*, 765 S.W.2d 394, 396 (Tex. 1989). Because the Goeths would not have standing whether they were individual shareholders of Tips or if their trusts held the interests in Tips**,** any error in excluding the summary judgment evidence would have been harmless.

*Thompson v. Vinson & Elkins*, 859 S.W.2d 617, 621 (Tex. App.—Houston [1st Dist.] 1993, writ denied); *Thomas v. Pryor*, 847 S.W.2d 303, 304 (Tex. App.—Dallas 1992), *judgm't vacated by agr.*, 863 S.W.2d 462 (Tex. 1993). The rationale behind the privity rule is that such a requirement "ensures that attorneys may in all cases zealously represent their clients without the threat of suit from third parties compromising that representation." *Barcelo*, 923 S.W.2d at 578-79. Implicit within the privity requirement is that the privity must exist with respect to the subject of the alleged malpractice.

In analyzing privity in this case, we begin with the proposition that a corporation is a legal entity separate and apart from the persons who compose it, making the corporation distinct from its stockholders, officers, and directors. *Commonwealth of Massachusetts v. Davis,* 168 S.W.2d 216, 222 (Tex. 1942). Thus, a cause of action against one who has injured the corporation belongs to the corporation and not to the shareholders. *Hajdik v. Wingate*, 753 S.W.2d 199, 201 (Tex. App.—Houston [1st Dist.] 1988), *aff'd,* 795 S.W.2d 717 (Tex. 1990). This is true even where the wrong has depreciated the value of the shareholder's investment in the corporation, impaired or destroyed its business, or otherwise harmed the shareholder. *Eye Site, Inc. v. Blackburn*, 796 S.W.2d 160, 161 (Tex. 1990) (citing *Wingate v. Hajdik*, 795 S.W.2d 717 (Tex. 1990)); *see also Schoellkopf v. Pledger*, 739 S.W.2d 914 (Tex. App.—Dallas 1987), *rev'd on other grounds*, 762 S.W.2d 145 (Tex. 1988) ("A stockholder has no right to sue for . . . destruction of its business, even if motivated by malice toward the stockholder individually.").

The concept of a corporation as a separate legal entity coincides with the privity doctrine of *Thompson*. Generally, rendering legal services to a corporation does not, by itself, create

10

privity between the attorney and the corporation's investors, its officers and directors, or its shareholders. *See Gamboa v. Shaw,* 956 S.W.2d 662 (Tex. App.—San Antonio 1997, no writ). In *Gamboa* and similarly in this case, a legal malpractice claim was asserted against counsel who had earlier simultaneously represented both a corporation and its majority shareholder. Plaintiff, a minority shareholder, claimed that the dual representation was a conflict of interest that damaged the corporation. In determining that the plaintiff lacked privity and standing to sue, the court noted:

> Such a deviation would result in attorneys owing a duty to each shareholder of any corporation they represent. With no privity requirement, corporate attorneys would be subject to almost unlimited liability. . . . Even more bothersome is the fact that attorneys representing corporations would owe a duty to both sides of the litigation in any type of derivative suit brought against the corporation by a shareholder. . . . This situation would place an unacceptable burden on the legal profession and would result in a degeneration in the quality of legal services received by corporate clients.

*Id.* at 665.

These principles do not, however, prohibit a stockholder from recovering damages for wrongs done to him individually "where the wrongdoer violates a duty arising from contract or otherwise, and owing directly by him to the stockholder." *Wingate*, 795 S.W.2d at 719 (quoting *Davis*, 168 S.W.2d at 222). To recover individually, a stockholder must prove a personal cause of action and personal injury. *Id.* To overcome the privity barrier under *Gamboa,* the Goeths must show that their alleged damages resulted from a breach of duty owed to the Goeths individually.

The Goeths cannot satisfy this requirement. In this case, appellees acknowledge that they were retained by both the Goeths and by Tips, but all of the Goeths' asserted damages arise only

11

from direct injuries to Tips: (1) entry of a judgment against Tips in the underlying lawsuit; (2) the jury's decision not to award damages to Tips based on the Goeths' counterclaims;[4] (3) the loss of "value of Tips;" (4) loss of value of real property owned by Tips; (5) loss of value of adjoining real property;[5] (6) loss of derivative claims against Wimberly;[6] and (7) loss of accounts receivable owed to Tips. If damages such as loss in value of stock in Tips or an entry of judgment against Tips resulted from any breach by counsel, it was necessarily a breach of a duty owed to Tips. Appellees were successful in having all individual claims against the Goeths dismissed and thus no claims can arise out of that aspect of the representation. The Goeths were not parties to the Management Agreement and did not have any individual claims that could result in an award of affirmative relief to them individually, other than relief in favor of Tips for which the shareholders would benefit derivatively. We conclude that the Goeths lack of standing to sue for injuries to Tips precludes their

---

[4] The only issue the Goeths could apparently argue as an individual injury was the loss of their counterclaims against 300 Baylor. Although these counterclaims should have been brought by Tips, the Goeths made these claims individually so they will be discussed separately.

[5] Prior to the 1995 Settlement Agreement, Mary Goeth owned a life estate in .9 acres of property located next to Tips. In the Settlement Agreement, Mary Goeth agreed to allow Tips to exercise an option to purchase the tract of land, which Tips exercised.

[6] Any recovery on the Goeths' derivative claims against Wimberly would have been for the benefit of Tips, and thus not for the benefit of the Goeths individually. *Christian v. ICG Telecom Canada, Inc.,* 996 S.W.2d 270, 274 (Tex. App.—Houston [1st Dist.] 1999, no pet.). As a result, although the corporation Tips may claim to have been aggrieved by the unsuccessful derivative claims, the Goeths may not make these claims individually.

ability to overturn the summary judgment. We must next determine whether the Goeths were entitled to damages for the loss of their individual counterclaims.

**Individual Counterclaims**

In the usual malpractice case, the attorney's malfeasance causes his or her client to lose a cause of action or defense. When a legal malpractice claim arises from prior litigation, the plaintiff has the burden to prove a "suit within a suit"; that is, the client must prove that, but for the attorney's negligence, the plaintiff would be entitled to judgment, and to show what amount he would have recovered in the judgment. *Hall v. Rutherford*, 911 S.W.2d at 424; *Mackie v. McKenzie*, 900 S.W.2d 445, 449 (Tex. App.—Texarkana 1995, writ denied). Whether the attorney's negligence is the "but-for," or proximate cause of the client's unsuccessful suit is usually a question of fact. *See Millhouse v. Wiesenthal*, 775 S.W.2d 626, 627 (Tex.1989) (recognizing general rule that causation is fact question, but holding causation in appellate legal-malpractice case is question of law). "Nonetheless, causation may be determined as a matter of law if the circumstances are such that reasonable minds could not arrive at a different conclusion." *Mackie*, 900 S.W.2d at 449 (citing *Missouri Pac. R.R. Co. v. American Statesman*, 552 S.W.2d 99, 105 (Tex. 1977)).

The jury in the second lawsuit found that 300 Baylor breached the agreements as asserted in the Goeths' counterclaims, but that 300 Baylor's breach was excused by Tips's prior repudiation of the agreements. These counterclaims should actually have been brought by Tips as Tips was the party to the Management Agreement. However, even if it was proper for the Goeths to bring this claim individually, it is reasonable to conclude as a matter of law that appellees fulfilled their legal duties to the Goeths since the jury rendered a verdict in favor of the Goeths'

13

counterclaims. The Goeths failed to express how appellees caused the jury to find a prior repudiation by Tips. The jury's finding of Tips's repudiation was not due any breach of legal counsel but was a result of Tips's actions in violating the Management Agreement. We therefore conclude as a matter of law that the Goeths failed to establish an element of their claim regarding causation for damages from appellee's representation regarding the counterclaims. We next determine whether the Goeths were entitled to attorney's fees and costs for the prosecution of their claims.

### Attorney's Fees

The Goeths sought disgorgement and forfeiture of the fees they paid appellees for their legal services. Disgorgement is a derivative remedy to which a claimant is entitled only upon proof of breach of fiduciary duty. *Burrow v. Arce,* 997 S.W.2d 229, 240-241 (Tex. 1999); *Green v. Brantley*, 11 S.W.3d 259, 268 (Tex. App.—Fort. Worth 1999, pet. denied*)*. This claim is dependent on the Goeths successfully proving breach of a fiduciary duty by appellees. The Goeths cannot prove such a breach due to lack of standing to recover damages to the corporation and the failure to establish causation for their individual counterclaims. Therefore, the Goeths were not entitled to attorney's fees and costs in prosecution of their claims. We overrule the Goeths' first, second, and fourth points of error.

### CONCLUSION

The Goeths lacked standing to bring their legal malpractice claims individually. Any injury by legal malpractice was directly made to the Tips corporation and indirectly harmed the

14

Goeths. Having overruled all issues presented, we hold that the trial court properly granted summary judgment in favor of appellees and affirm the judgment.

_____

W. Kenneth Law, Chief Justice

Before Chief Justice Law, Justices Patterson and Puryear

Affirmed

Filed:   April 14, 2005