Opinion issued June 2, 2005












     





In The
Court of Appeals
For The
First District of Texas




NO. 01-03-01084-CV




GREENE’S PRESSURE TREATING & RENTALS, INC., AND 
H. ROWE GREENE LEASING COMPANY, L.L.C., Appellants

V.

FULBRIGHT & JAWORSKI, L.L.P.,
JOHN MINGS, JACK VAUGHAN, JOHN BARRETT,
AND DAVID TANNENBAUM, Appellees




On Appeal from the 151st District Court
Harris County, Texas
Trial Court Cause No. 2003-23263




O P I N I O N

          This is an appeal from a summary judgment granted to appellees, Fulbright &
Jaworski, L.L.P., John Mings, Jack Vaughan, John Barrett, and David Tannenbaum
(collectively “Fulbright”), in a case involving allegations of breach of fiduciary duty
brought by appellants, Greene’s Pressure Treating & Rentals, Inc., and H. Rowe
Greene Leasing Company, L.L.C. (collectively “Greene”). In two issues, Greene
contends that the trial court erred in granting Fulbright’s motion for summary
judgment as to Greene’s breach of fiduciary duty claim because (1) Greene met its
burden to show the duty element of its claim and (2) Fulbright failed to show that
Greene’s claims are barred by limitations, as alleged.
          We affirm.
FACTS AND PROCEDURAL HISTORY
          In 1991, United States Patent No. 5,027,842 (“the ‘842 patent”) was issued to
Marvin Powers for his method of commissioning pipelines.


 Powers assigned the
patent to BJ Services Company (“BJS”). During the same period, Coulter Service
Company (“Coulter”) also developed a commissioning process (“the Coulter
Process”). BJS initially claimed that the Coulter Process infringed on the ‘842 patent,
but later abandoned its claim.
          In 1992, Pipetronix acquired Coulter and the rights to the Coulter Process. BJS
reappeared and threatened suit against Pipetronix for infringement on the ‘842 patent. 
In 1997, Pipetronix retained Fulbright to provide a legal opinion concerning whether
the Coulter Process infringed on the ‘842 patent. Fulbright issued a confidential
opinion letter that the Coulter Process did not infringe on the ‘842 patent.
          In 1999, Pipeline Integrity International (“PII”) acquired Pipetronix. PII used
the Coulter Process. BJS initially threatened infringement action, but later abandoned
its claim. Eventually, PII sold 95% of the original Pipetronix assets to General
Electric (“GE”) and the remaining 5% to Greene. Rights to the Coulter Process were
included in the 5% to Greene. 
          Greene began using the Coulter Process. In 2000, BJS appeared again and
asserted that such use constituted an infringement on the ‘842 patent. On November
22, 2000, Greene filed an action for declaratory judgment. On December 19, 2000,
BJS, represented by Fulbright, filed an action against Greene, claiming infringement. 
Greene notified Fulbright that Fulbright’s position in this suit (asserting infringement)
appeared to conflict with Fulbright’s position in its prior opinion letter (declaring
non-infringement). Fulbright continued to represent BJS. Greene filed a Motion to
Disqualify Plaintiff’s Counsel, which was later denied as moot due to ongoing
settlement negotiations and, on a motion by BJS, the case was dismissed. 
          On May 1, 2003, Greene filed suit against Fulbright for malpractice, breach of
fiduciary duty, and violations of the Deceptive Trade Practices Act (“DTPA”), based
on Fulbright’s representation of BJS. Fulbright moved for summary judgment on the
grounds that Fulbright owed no duty to Greene as a matter of law and that Greene was
not a consumer under the DTPA. Fulbright attached to its motion, as evidence,
Greene’s original petition; the affidavit of Gunnar Kopp of Pipetronix, stating that
less than 5 percent of Pipetronix’s assets were sold to Greene; the affidavit of William
R. Pakalka of Fulbright, stating that Greene has never sought or obtained legal
services from Fulbright; the asset purchase agreement between PII, as successor in
interest to Pipetronix; and Fulbright’s non-infringement opinion letter. In response
to the motion, Greene’s evidence included the affidavit of Robert Vilyus, president
of PII, stating that Greene purchased the Coulter Process from PII; and the affidavit
of Eric Langlinais, president of Greene, stating that Greene’s purchase of the Coulter
Process was conditioned on the representation that it did not infringe on any patent. 
          On September 23, 2003, the trial court granted summary judgment in favor of
Fulbright. Greene solely appeals the summary judgment as to its breach of fiduciary
duty claim.
ANALYSIS
          In its first issue, Greene contends that the trial court erred in granting summary
judgment for Fulbright on the ground that Greene failed to meet its burden as to the
duty element of breach of fiduciary duty claim. Greene contends that a fiduciary duty
arose solely from an attorney-client relationship that was created between it and
Fulbright by virtue of the transfer of the Coulter Process.
Summary JudgmentA.Standard of Review
          We review a trial court’s granting of a summary judgment de novo. Natividad
v. Alexsis, Inc., 875 S.W.2d 695, 699 (Tex. 1994). A summary judgment under Rule
of Civil Procedure 166a(c) is properly granted only when a movant establishes that
there are no genuine issues of material fact and that he is entitled to judgment as a
matter of law. Tex. R. Civ. P. 166a(c); Nixon v. Mr. Prop. Mgmt., 690 S.W.2d 546,
548 (Tex. 1985). A defendant moving for summary judgment must either (1)
disprove at least one element of the plaintiff’s cause of action, or (2) plead and
conclusively establish each essential element of an affirmative defense to rebut
plaintiff’s cause. Cathey v. Booth, 900 S.W.2d 339, 341 (Tex. 1995). In deciding
whether there is a disputed material fact precluding summary judgment, every
reasonable inference must be indulged in favor of the non-movant and any doubts
resolved in its favor. Tex. R. Civ. P. 166a; Nixon, 690 S.W.2d at 549. 
 
 
          When, as here, a trial court does not state the basis for its decision in its
summary judgment order, we must uphold the order if any of the theories advanced
is meritorious. State Farm Fire & Cas. Co. v. S.S., 858 S.W.2d 374, 380 (Tex. 1993).
B.      Breach of Fiduciary Duty
          To recover on a breach of fiduciary duty claim, a plaintiff must first show that
the defendant owed a fiduciary duty. Abetter Trucking Co. v. Arizpe, 113 S.W.3d
503, 508 (Tex. App.—Houston [1st Dist.] 2003, no pet.) (enumerating elements of
breach of fiduciary duty claim as existence of fiduciary duty, breach of that duty,
causation, and damages). An attorney has a fiduciary duty to his client when an
attorney-client relationship is created. See Willis v. Maverick, 760 S.W.2d 642, 645
(Tex. 1988); Thompson v. Vinson & Elkins, 859 S.W.2d 617, 623 (Tex.
App.—Houston [1st Dist.] 1993, writ denied). An attorney-client relationship arises
when an attorney agrees to render professional services to a client. Mellon Serv. Co.
v. Touche Ross & Co., 17 S.W.3d 432, 437 (Tex. App.—Houston [1st Dist.] 2000, 
no pet.). This relationship may be expressly created by contract, or impliedly created
through the parties’ actions. Id. 
          Greene does not contend that it created a formal contractual relationship with
Fulbright. Rather, Greene asserts that it has an attorney-client relationship with
Fulbright solely by virtue of Greene’s purchase of the Coulter Process. In 1997,
Fulbright issued an opinion letter to its client, Pipetronix, stating that the Coulter
Process did not infringe on the ‘842 patent. Greene contends that this opinion
transferred with the sale of the Coulter Process asset from Pipetronix, through PII, to
Greene. Greene maintains that it relied upon this letter when it purchased the Coulter
Process from PII, and that such reliance created an attorney-client relationship
between Fulbright and Greene. It is this alleged attorney-client relationship that
provides the basis for Greene’s assertion that Fulbright owed Greene a fiduciary duty. 
In essence, Greene asks this Court to find that, when it purchased the Coulter Process,
it purchased the right to assert the former attorney-client relationship that once
concerned the asset.
          Whether a prior attorney-client relationship transfers depends on whether the
transaction is characterized as a merger or merely as an acquisition of assets. In re
Cap Rock Elec. Coop., Inc., 35 S.W.3d 222, 227 (Tex. App.—Texarkana 2000, no
pet.). An attorney-client relationship will transfer when a merger of two corporations
takes place. Id. (citing Commodity Futures Trading Comm’n v. Weintraub, 471 U.S.
343, 34[9], 105 S. Ct. 1986, 1991 (1985)). In a merger, the successor organization
stands in the shoes of prior management and continues the operations of the prior
entity. Id. at 228. Generally, the rights and liabilities transfer, including a prior
attorney-client relationship. Id. at 227–28; see Tex. Bus. Corp. Act Ann. art.
5.06(A)(2) (Vernon Supp. 2004–2005). 
          However, when a corporate transaction is merely a sale of assets, it is not a
merger, and rights and liabilities do not transfer unless expressly assumed. In re Cap
Rock Elec. Coop., Inc., 35 S.W.3d at 227–28; Tex. Bus. Corp. Act Ann. art.
5.10(B)(1) (Vernon 2003). A mere transfer of assets, with no attempt to continue the
pre-existing operation, does not transfer the prior attorney-client relationship. In re
Cap Rock Elec. Coop., Inc., 35 S.W.3d at 227–28. 
          Here, the parties agree that the transaction between PII and Greene was not a
merger. However, Greene contends that its purchase of the Coulter Process from PII
constitutes a continuation of “an operating division or unit of a company” and
because it was “that division or unit to which representation by the attorney applies,
then the privileges between the attorney and the division of the company sold should
transfer.”
          In examining the transfer between PII and Greene, the agreement, entitled
“Agreement for Purchase of Assets,” provides, in pertinent part, that PII intended to
sell all of its “right, title and interest in and to [a list of assets, including technical and
office equipment] and the rights relating thereto, including the goodwill associated
with PIPETRONIX’s prior use and operation of such equipment.” PII states that the
assets are purchased “as is” and that PII makes no warranties with respect to any of
the assets. To the extent that PII had knowledge, it warranted that none of the assets
nor the use of such assets violated or infringed on any patent. Moreover, the
agreement states that the “Buyer confirms that it has made its own investigation” and
has not relied on any statement or information furnished by the Seller unless
specifically provided for in the agreement. 
          In addition, the evidence shows that the affidavit of Gunnar Kopp of Pipetronix
states that less than five percent of Pipetronix’s assets were sold to Greene. This
evidence suggests that the parties did not contemplate that Greene would take over
ongoing operations; rather, it appears that Greene was to use the assets it purchased
in conducting its own operations. In addition, the affidavit of William R. Pakalka of
Fulbright states that Greene never sought or obtained legal services from Fulbright
and that Fulbright’s non-infringement opinion letter, written to Pipetronix, was
considered confidential and privileged by the parties. 
          Based on the language of the agreement, we conclude there is no support for
Greene’s contention that the transaction should be treated as anything more than a
purchase of assets. In addition, we conclude that there is nothing in the agreement
to support Greene’s contention that PII had the intent or the ability to transfer the
prior attorney-client relationship that existed between its predecessor, Pipetronix, and
Fulbright. Further, the affidavit evidence supports that a bare transfer of assets took
place.
          Greene’s sole authority for its proposition that we treat its acquisition of the
Coulter Process asset as something less than a merger, but something more than an
acquisition of an asset, is Graco Children’s Products, Inc. v. Regalo Intern. L.L.C.,
1999 WL 553478 (E.D. Pa. 1999). Even if Graco could be construed as support, we
are bound by precedent holding that the attorney-client relationship belongs to the
management of a solvent corporation. See Weintraub, 471 U.S. at 348–49, 105 S. Ct.
at 1991. The evidence shows that no merger took place between PII and Greene, and 
that PII remains a solvent corporation as a subsidiary of GE.We conclude as a matter of law that no attorney-client relationship was created
by virtue of Greene’s purchase of the Coulter Process asset; thus, Fulbright owed no
fiduciary duty to Greene on this basis. We conclude that Fulbright has carried its
burden to show that Greene cannot show evidence of the duty element of its claim. 
Accordingly, the rendition of summary judgment on this ground was proper. 
          We overrule Greene’s first issue.
Limitations Defense
          Having found that Greene’s claim fails as a matter of law because Greene failed
to meet its burden to show evidence of the duty element of its claim, we need not
reach Greene’s second issue concerning whether its claim was filed before the
expiration of the limitations period.
 
 
 
 
CONCLUSION

          We affirm the trial court’s judgment.
 



                                                             Laura Carter Higley 
                                                             Justice

Panel consists of Justices Taft, Alcala, and Higley.